IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JOSEPH LUNDSTROM and
JANE HIBNER,

      Plaintiffs,

vs.                                          CIV No. 07-759 JCH/WDS

ALBUQUERQUE POLICE OFFICERS
DEBRA ROMERO, ANTHONY SEDLER,
LORENZO APODACA, EDOUARD TAYLOR,
and ZAZZA GREEN, in their individual
capacities and as employees of the
City of Albuquerque,

      Defendants.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Plaintiffs' *Motion for the Court to Reconsider Plaintiffs' Original Motion for Summary Judgment*, filed June 3, 2011 [Doc. 164]. Having considered the motion, the parties' briefs and exhibits, and the Tenth Circuit's Opinion and Judgment entered on August 17, 2010 in case number 08-2254, and being otherwise fully informed, the Court finds that Plaintiffs' motion should be DENIED.

## BACKGROUND.

The facts of this case are discussed in detail in the Court's Memorandum Opinion and Order dated September 11, 2008 [Doc. 136] and in the Tenth Circuit's opinion, 616 F.3d 1108 (10th Cir. 2010) ("Circuit opinion").[1] Therefore, a general familiarity with these facts will be assumed. On May 29, 2008, Plaintiffs filed a Motion for Summary Judgment [Doc. 104]. Plaintiffs' motion alleged that Defendants, police officers employed by the City of Albuquerque, violated Plaintiffs' clearly established constitutional rights by: (1) seizing and/or arresting them

---

[1] The Circuit opinion is also attached as Ex. 1 to Doc. 149.

without reasonable suspicion or probable cause; (2) using excessive force against Mr. Lundstrom; and (3) searching Mr. Lundstrom's house illegally.[2]  Defendants filed Motions for Summary Judgment seeking dismissal of Mr. Lundstrom's claims [Doc. 72] and Ms. Hibner's claims [Doc. 76], arguing that the officers were entitled to qualified immunity.

On September 11, 2008, the Court granted Defendants' motions for summary judgment and denied Plaintiffs' motion for summary judgment [Doc. 136].  Plaintiffs appealed this ruling to the Tenth Circuit.  On August 17, 2010, the Tenth Circuit issued a ruling affirming in part and reversing in part the Court's ruling granting qualified immunity.  *See* Circuit opinion, 616 F.3d at 1129.  The Tenth Circuit's opinion explicitly addressed only the Court's ruling on Defendants' motions for summary judgment; it did not address the Court's denial of Plaintiffs' motion for summary judgment and its mandate did not order that Plaintiffs' motion for summary judgment be granted.  *Id*.

Plaintiffs sought leave of the Court to file a motion for reconsideration, which Defendants opposed as futile.  The Court granted Plaintiffs the opportunity to file the instant motion, indicating that the motion should attempt to demonstrate the manner in which the Circuit opinion made findings of law based on undisputed facts such that, under the Circuit court's logic, Plaintiffs' motion for summary judgment must be granted.  *See* Order [Doc. 163].  Defendants contend that, because Plaintiffs did not file a motion for reconsideration within 28 days of the Court's denial of summary judgment as required to proceed under Fed. R. Civ. P. 59(e), Plaintiffs' motion must be governed by Fed. R. Civ. P. 60(b), under which relief may be

---

[2] Plaintiffs' Complaint also asserts tort claims under state law for assault, battery, trespass, false arrest, and false imprisonment.  These claims were not addressed in Plaintiffs' motion for summary judgment.

granted only in exceptional circumstances.  *See* Deft. Resp. [Doc. 165] at 2.  However, as explained in the Court's Order granting Plaintiffs leave to file their motion for reconsideration, an order denying a motion for summary judgment is generally not considered a final order, and the Court therefore has the inherent, discretionary authority to revisit its interlocutory order at any time prior to the filing of a final judgment.  *See Raytheon Constructors, Inc. v. Asarco, Inc.*, 368 F.3d 1214, 1217 (10th Cir. 2003).  Thus, the Court's decision of whether to revise its initial denial of Plaintiffs' motion for summary judgment is not based on a heightened standard, but rather only on its determination of whether reversal is compelled by the Circuit opinion.

## ANALYSIS

Plaintiffs contend that the Circuit opinion makes legal rulings that are applicable to their motions for summary judgment as well as to Defendants' motions for summary judgment.  On the one hand, because it is evaluating whether Defendants are entitled to summary judgment, the Circuit opinion indicates throughout that the court reached its determination by viewing the evidence in the light most favorable to Plaintiffs.  *See* 616 F.3d at 1115 (Plaintiffs "have *alleged* facts sufficient to demonstrate...) (emphasis added); *id*. at 1122 ("On the record before us...the facts, as interpreted in the light most favorable to [Plaintiffs], were the following:"); *id*. at 1129 ("examining the undisputed facts and drawing all reasonable inferences in favor of [Plaintiffs], as we must...").  However, the Circuit opinion also appears to take some of Defendants' evidence into consideration when reaching its conclusions.  For instance, the opinion speaks of drawing conclusions based on a review of "the record before us" rather than simply on a consideration of Plaintiffs' evidence.  *Id*. at 1123.  It states certain facts from the Defendants' perspective, such as "Officer Romero drew her gun to protect her safety and kept it pointed at Lundstrom only for so long as necessary to determine he was not armed," even though Plaintiffs had contested such a

characterization. Given this and other examples cited by Plaintiffs, it is understandable that Plaintiffs read the opinion to be making rulings based on an equal weighing of both sides' evidence rather than limiting its findings to those based only on viewing the evidence from Plaintiffs' perspective. Nonetheless, even an equal weighing of evidence would not justify a grant of summary judgment for Plaintiffs, as evidence must be viewed in the light most favorable to the non-movant when making the determination of whether summary judgment is warranted.

In determining whether the Circuit opinion dictates how this Court must treat Plaintiffs' motion for summary judgment, the Court must analyze not only the prism through which the Circuit court viewed the evidence before it, but also whether the evidence before the Circuit court sufficiently encompassed Plaintiffs' motion for summary judgment as well as the appeal of the qualified immunity decision. Plaintiffs make much of the fact that Defendants adopted this Court's recitation of the underlying facts of this case for purposes of appellate review. *See* Pl. Mot. [Doc. 164] at 6. However, given the context in which Defendants made this adoption, this is not the same as Defendants agreeing that no disputes of material facts exist with respect to Plaintiffs' claims. In fact, in their Answer Brief to the Tenth Circuit, Defendants explain that they are adopting this Court's recitation of "those additional, material 'facts' that, while disputed, are to be accepted as true for review purposes under Rule 56." Ex. A, attached to Pl. Mot. [Doc. 164] at 12. In other words, in arguing that they were entitled to summary judgment based on qualified immunity, Defendants accepted Plaintiffs' assertions (and this Court's characterization of those assertions) as true for that purpose, but that is not the same as saying

that Plaintiffs' contentions are undisputed in all contexts.[3]

Plaintiffs contend that Defendants "erroneously inform[ed] the court that 'the sole issue on appeal before the Tenth Circuit was an analysis of whether the Court erred in determining that the individually named defendants were entitled to qualified immunity.'" Pl. Rep. [Doc. 166] at 1 (quoting Deft. Resp. [Doc. 165] at 2). Plaintiffs cite the fact that, in their briefing to the Tenth Circuit, they sought entry of summary judgment for themselves in addition to seeking reversal of the grant of qualified immunity for Defendants. *Id*. at 1-2. However, simply because Plaintiffs mentioned the issue in their briefing does not mean that the Circuit court considered their motion for summary judgment when rendering its decision on the question of Defendants' qualified immunity. In fact, not only did the Circuit opinion not take a position on Plaintiffs' motion, but such a motion would not even have been properly before the Circuit court in this interlocutory posture. *See Bass v. Richards*, 308 F.3d 1081, 1086 (10th Cir. 2002) (court does not have jurisdiction over interlocutory appeal of denial of summary judgment motion unless it involves denial of a qualified immunity defense). Thus, Defendants are correct in stating that the sole issue before the Circuit court was whether they were entitled to qualified immunity. In this context, Defendants could not be expected to emphasize the existence of factual disputes, and the Circuit court's findings cannot fairly be said to constitute a definitive ruling on Plaintiffs'

---

[3] Plaintiffs suggest that it is somehow inconsistent for Defendants to have moved for summary judgment on the basis that there are no material facts in dispute but to now assert that issues of disputed fact preclude entry of summary judgment for Plaintiffs. *See* Pl. Mot. [Doc. 164] at 12-13. Of course, the very Plaintiffs who now assert that no issues of material fact preclude entry of summary judgment on their behalf contended that "the 'facts' that Defendants assert are clearly in dispute and should be determined by the finder of fact," when they opposed Defendants' motions for summary judgment. Pl. Resp. to Defts.' MSJ on Plaintiff Hibner's Claims [Doc. 85] at 1. There is nothing inconsistent or unseemly about accepting an opposing party's allegations as true for one context and contesting such allegations in another context.

claims. As explained below, when taking into account evidence not relied on by the Circuit court in making its ruling on qualified immunity, and when viewing the evidence and making inferences in the light most reasonable to Defendants, it becomes clear that the reasoning on which the Circuit court based its qualified immunity findings does not compel this Court to grant summary judgment to Plaintiffs.

Several of the Circuit court's rulings need not be revisited in this opinion. The Circuit court ruled in Defendants' favor on the questions of whether either Mr. Lundstrom or Ms. Hibner was illegally seized when any of Defendants pointed their guns at them. *See* 616 F.3d at 1121-22. Thus, although Defendants point out factual disputes between their evidence and the facts adopted by the Circuit court on issues such as whether Ms. Hibner ever had a gun pointed at her, the Court need not address such disputes as the Circuit court's ruling has already foreclosed Plaintiffs' motion on this issue. In addition, the Court has already recognized that the Circuit opinion precluded summary judgment for Plaintiffs on the issue of whether excessive force was used against Mr. Lundstrom, as the Circuit court's ruling explicitly rested on an assumption that Mr. Lundstrom's disputed allegations were true. *See* Doc. 163 at 4. Therefore, the Court will focus on the four remaining areas in which the Circuit court denied Defendants' claims of qualified immunity to determine whether those rulings necessitate granting summary judgment for Plaintiffs on those issues.

  A. <u>Handcuffing of Ms. Hibner</u>

In evaluating Defendants' claims of qualified immunity relating to the handcuffing of Ms. Hibner, the Circuit court recognized that "[o]fficers are authorized to handcuff individuals during the course of investigative detentions if doing so is reasonably necessary to protect their personal safety or maintain the status quo." 616 F.3d at 1122 (citing *United States v. Neff*, 300

F.3d 1217, 1220 (10th Cir. 2002)). However, based "on the record before [it]," the Circuit court found that handcuffing Ms. Hibner was not a reasonable response to the circumstances presented to the officers because the actions they took in detaining her were not reasonably related in scope to the investigation. *Id*. at 1123. The court made its determination based on the undisputed facts before it at the time, and by explicitly interpreting those facts "in the light most favorable to Lundstrom and Hibner." *Id*. Thus, the court based its ruling on the assumptions that officers immediately handcuffed Ms. Hibner and led her to the curb, and that Ms. Hibner did not act in a threatening manner or refuse to cooperate with police, thereby providing no reasonable basis for the officers to be concerned for their safety or to believe that their investigation was being impeded. *Id*.

    A different story is told when conflicting evidence is introduced and viewed from Defendants' perspective. Testimony from Defendants paints a portrait of Ms. Hibner as upset and noncompliant from the outset. The dispatch recording reflects a somewhat chaotic scene in which Ms. Hibner is standing in the front doorway attempting to broker communication between Mr. Lundstrom, the police dispatcher, and the officers outside. *See* Ex. B, attached to Doc. 73, at 43-46. The recording shows Officer Apodaca repeatedly having to ask Ms. Hibner to calm down and to step away from the house before she finally complied. *Id*. at 46-48. Officer Green testified that, when she arrived, Ms. Hibner was outside, crying and "hysterical." *See* Ex. E, attached to Doc. 73, at 12:12-13. At this point, according to Officer Green's testimony, Ms. Hibner was not in handcuffs. *See* Ex. A, attached to Doc. 165, at 15:24-16:1. Officer Green testified that Ms. Hibner was told to sit on the curb and, at one point, got up from the curb and came right behind her. *Id*. at 12:19-21. Not only did Ms. Hibner allegedly come up behind Officer Green after having been ordered to sit on the curb, but she physically ran into her. *Id*. at

30:1-9. Officer Green, understandably perceiving this as a safety issue, led her back to the curb and told her to sit back down. *Id*. at 12:21-22, 30:8-9. At this point, for an indeterminate amount of time, "she was not complying with anything that she was being told by the officers." *Id*. at 12:22-24.

The Circuit court did not appear to consider this evidence in reaching its conclusion that "Hibner did not act in a threatening manner, nor did she refuse to cooperate with police," thereby providing "no reasonable basis for the officers to be concerned for their safety." 616 F.3d at 1123. This makes sense because, in evaluating only Defendants' claims of qualified immunity, the Circuit court was constrained to view the evidence from Plaintiffs' perspective. Indeed, in their motion for summary judgment on Ms. Hibner's claims, Defendants relied on Ms. Hibner's deposition in which she stated that she was compliant with the officers and was handcuffed before being seated on the curb, because, for purposes of moving for qualified immunity, introducing conflicting evidence to create a question of fact would not have benefitted Defendants. *See* Doc. 77 at 7 ¶¶ 19-20.

Given the testimony regarding how Ms. Hibner was acting prior to being handcuffed, and viewing the evidence in the light most favorable to Defendants, the Court finds that questions of fact exist as to whether handcuffing Ms. Hibner was reasonably necessary to protect the officers' personal safety or to maintain the status quo, and the Court therefore declines to revise its ruling denying Plaintiffs' motion for summary judgment on this issue.

  B. <u>Mr. Lundstrom's Seizure when he Exited the House</u>

In denying Defendants' motions for qualified immunity, the Circuit court found that Mr. Lundstrom was unreasonably seized when he eventually left his house because "nothing indicated he had done anything wrong and he did not pose a threat to the officers." 616 F.3d at

1124. The Circuit court noted that the record indicates that "the neighbor reported hearing a *woman*–not a *man*–disciplining a child," that Mr. Lundstrom had denied that there was a child at the house, that the caller had backtracked about the location of the incident, that Ms. Hibner had not yet been interviewed, that nothing suggested criminal activity, and that the officers had not perceived anything suggesting a child's presence at the house. *Id*. (emphasis in original). The Circuit court also found that, under these circumstances, exigent circumstances did not exist to support Mr. Lundstrom's seizure because they did not have a reasonable basis to believe a child was in the home or that Mr. Lundstrom posed a threat to them or to anyone else. *Id*. at 1124-25.

The Circuit court was clearly viewing the evidence before it in the light most favorable to Plaintiffs when it reached these conclusions. Viewing the evidence and drawing inferences in favor of Defendants, as this Court is required to do when evaluating Plaintiffs' motions for summary judgment, yields a different result.

As an initial matter, the evidence available to officers at the time suggested that Mr. Lundstrom may have been involved in a violent incident with a child. Rather than the report from the neighbor being limited to "a woman–not a man–disciplining a child," the caller stated that "The people across the alley from me are like beating their toddler, and they've got him outside in the rain...I can hear them smacking him. And he's screaming." Ex. B, attached to Doc. 73, at 2:9-16.[4] Later in that initial call, the witness states that she could not tell if the child

---

[4] The Circuit opinion, perhaps relying on an erroneous submission, characterizes the background as "a neighbor called 911 and reported she heard a woman at Lundstrom's residence 'like beating [her] toddler, and [she's] got him outside in the rain....'" 616 F.3d at 1115 (alterations in original). This changes the focus of the witness' report from a man and a woman to solely a woman, providing support for the Circuit court's characterization that "the neighbor reported hearing a *woman*–not a *man*–disciplining a child" that falls away when the correct quotation is considered.

was still outside, despite having driven down the alley to attempt to look over the fence into Mr. Lundstrom's yard, and that "I don't know if they let him back in the house or what." *Id.* at 3:11-12.  When the dispatcher called the witness back to get more information, because Mr. Lundstrom had denied that a child was present, the witness stated that Mr. Lundstrom and Ms. Hibner "have like part-time custody of the child, because he's only over there once in a while.  But he's always screaming and they're always yelling and cursing at him and stuff...[b]ut this is the first time I've ever heard them like striking him...and then they had him outside and it was pouring rain."  Ex. B, attached to Doc. 105, at 52:12-19.  The Circuit court based its finding that Defendants' seizure of Mr. Lundstrom was unreasonable in part on its finding that the evidence indicated that only a woman was involved in "disciplining" a child and that nothing indicated that Mr. Lundstrom had done anything wrong.  Viewing the witness' statements in the light most favorable to Defendants, the witnesses' repeated use of the terms "they" and "them" could have led officers to reasonably believe that Mr. Lundstrom had been involved in an incident in which a child was being beaten and forced to stay outside in the pouring rain.

       Adding to the reasonableness of the officers' beliefs is the credibility of the witness, Beth Mohr.  When she called 911, Ms. Mohr immediately gave her name and telephone number to the operator.  *See* Ex. B, attached to Doc. 73, at 2:22-3:6.  She identified herself as a retired police officer, and said that she is, therefore, "not particularly prone to hysterics"  Ex. B, attached to Doc. 105, at 52:8-12.  She indicated a specific knowledge of Mr. Lundstrom and Ms. Hibner by noting that they had part-time custody of the child, and she provided a history of verbal abuse of the child.  *Id*. at 52:12-15.  She even gave her address and offered to meet with the officers if they wanted to come by.  *Id*. at 53:3-4.  Viewing the evidence in the light most favorable to Defendants, it was reasonable for the officers to rely on Ms. Mohr's report that there was a child

present at the home who was potentially in danger, because Ms. Mohr was not anonymous, she claimed firsthand knowledge of the alleged beating, and her motive in making the report appeared to be to aid the child rather than to implicate a particular person. *See United States v. Brown*, 496 F.3d 1070, 1076-77 (10th Cir. 2007).

The Circuit opinion indicated that, for purposes of determining qualified immunity, exigent circumstances did not exist to justify the seizure of Mr. Lundstrom because the officers did not have a reasonable basis for believing that Mr. Lundstrom posed an immediate threat to anyone, nor did they have grounds to believe that a child was in the home. However, while the information available to officers may not have been sufficient to result in them being qualifiedly immune for their seizure of Mr. Lundstrom when viewed in the light most favorable to Plaintiffs, when viewed in the light most favorable to Defendants, the information was sufficient to give Defendants a reasonable basis to believe that they had a need to seize Mr. Lundstrom.

Corroborating evidence is not a requirement for exigent circumstances to exist, as long as some factual support exists to back up the claim. *See Armijo v. Peterson*, 601 F.3d 1065, 1071-72 (10th Cir. 2010). As previously discussed, officers could reasonably rely on the information provided to them by Ms. Mohr. Officer Romero testified that when she first arrived at Mr. Lundstrom's house, she heard high-pitched voices, that could have come from a child. *See* Ex. C, attached to Doc. 73, at 23:11-19. When she first made contact with Mr. Lundstrom, stating that she was from the Albuquerque Police Department and explaining that she was checking on the welfare of a child, Mr. Lundstrom immediately became aggressive, saying "there [are] no f***ing kids here," and slamming the door. *Id*. at 24:7-16. When she rang the doorbell a second time and again tried to converse with Mr. Lundstrom about the report of an endangered child, Mr. Lundstrom questioned her credentials, slammed the door again, and paced inside screaming

11

profanities.  *Id*. at 24:17-28:8.  Given Ms. Mohr's specific report, coupled with the high-pitched voices that Officer Romero heard upon approaching the house and the evasive, belligerent, and uncooperative actions displayed by Mr. Lundstrom when questioned about the presence of a child, the officers could reasonably have believed that a child was in danger inside the house.[5]

The Circuit opinion based its determination that the officers were not entitled to qualified immunity in part on its finding that nothing indicated that Mr. Lundstrom posed a threat to officers.  Shifting the view from Plaintiffs' perspective to the officers' perspective dictates a different result.  Not only did Mr. Lundstrom immediately become aggressive and belligerent when Officer Romero announced her reason for coming to the house, he continued to pace and yell behind the closed door to his house, concerning Officer Romero to the point that she called for backup.  *Id*. at 28:6-22.  When requesting backup, Officer Romero reported that she was dealing with a "barricaded subject."  Ex. D, attached to Doc. 73, at 15:8-9.  Officer Taylor observed Mr. Lundstrom pacing back and forth, having moved from his front door into his bedroom, and such information was reported to the officers.  Ex. B, attached to Doc. 73, at 16:22-17:5.  While on the phone with dispatch, Mr. Lundstrom displayed a threatening tone and demeanor, suggesting to dispatch that if the officers fight with him, he will fight back, and such information was relayed to the officers.  *Id*. at 17:13-15.  Viewing the evidence in the light most favorable to Defendants, the officers had no way of knowing whether Mr. Lundstrom was armed when he left the house.  Given his demeanor and the fact that he had been hidden from view and

---

[5] The Circuit opinion noted that the officers were not entitled to qualified immunity for the seizure in part because the officers did not perceive anything suggesting a child's presence at the house.  616 F.3d at 1124.  However, at the time the officers seized Mr. Lundstrom as he left the house, officers had not been allowed to see the inside of the house, and would have had no way to know if evidence of a child was contained inside.

had been moving throughout his house, the officers had a reasonable basis to believe that Mr. Lundstrom posed a threat to them. Under the circumstances as presented by Defendants, the Court cannot say that it was objectively unreasonable for Defendants to seize Mr. Lundstrom when he finally exited his house.

C. Mr. Lundstrom's Handcuffing

The Circuit opinion based its findings that Mr. Lundstrom's handcuffing was unreasonable solely on its conclusion that his initial detention was unreasonable. Because, for purposes of Plaintiffs' motion for summary judgment, the Court has determined that Mr. Lundstrom was reasonably detained, the Circuit opinion's conclusion related to handcuffing does not pertain.

D. Search

The Circuit court based its conclusion that the search of Mr. Lundstrom's house was unreasonable on "Lundstrom and Hibner's view of the facts." 616 F.3d at 1128. One of the contentions that the Circuit court cited in making its finding is Plaintiffs' allegation that the officers were in the house for approximately ten minutes. *Id*. Officer Sedler, on the other hand, has testified that the officers were in the house just long enough to see if anyone was hiding or needed help. *See* Ex. F, attached to Doc. 73, at 27:1-22. This factual discrepancy, combined with the Court's finding that, when viewed in the light most favorable to Defendants, evidence existed such that Defendants could reasonably have believed that a child could be present prior to entering the house, prevents the Court from granting summary judgment to the Plaintiffs on this issue.

**CONCLUSION**

**IT IS THEREFORE ORDERED** that Plaintiffs' *Motion for the Court to Reconsider*

*Plaintiffs' Original Motion for Summary Judgment* [Doc. 164] is DENIED.

                                                                                              _____
                                                                                            **UNITED STATES DISTRICT JUDGE**