IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JOSEPH LUNDSTROM and
JANE HIBNER,

       Plaintiffs,

vs.                                                       CIV No. 07-759 JCH/WDS

ALBUQUERQUE POLICE OFFICERS
DEBRA ROMERO, ANTHONY SEDLER,
LORENZO APODACA, EDOUARD TAYLOR,
and ZAZZA GREEN, in their individual
capacities and as employees of the
City of Albuquerque,

       Defendants.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on *Defendants' Motion in Limine No. I to Exclude Any Evidence of Any Allegations of Prior and Subsequent Bad Acts* (Doc. 113), *Defendants' Motion in Limine No. II to Exclude Any Evidence Pertaining to Police Standard Operation Procedures* (Doc. 115), *Plaintiffs' First Motion in Limine* (Doc. 117), and *Plaintiffs' Second Motion in Limine* (Doc. 170). Having considered the motions and the parties' briefs and exhibits, and being otherwise fully informed, the Court finds that the parties' motions should be either granted or taken under advisement, as set forth below.

 I.     **Defendants' Motion in Limine No. 1 to Exclude Any Evidence of Any Allegations of Prior and Subsequent Bad Acts**

Defendants' first motion seeks to preclude Plaintiffs from introducing into evidence any allegations made against, or records of disciplinary actions relating to, any of the Defendant officers for "bad acts" committed by the officer(s) – including computer-aided dispatch (CAD) and other police reports pertaining to another incident that occurred in Plaintiff Lundstrom's

neighborhood only hours after the events in issue.

It is unclear whether Plaintiffs' response identifies all the evidence of Defendants' "bad acts" they will seek to introduce at trial. Rather, Plaintiffs simply note their plan to impeach Defendant Romero's deposition testimony that (1) she was unaware of the other, close-in-time incident in Lundstrom's neighborhood, and (2) that, except for the event at issue, she had never worked with any of her Co-Defendants, with evidence including CAD records, other police records, a supplemental report allegedly authored but not filed by Romero, and a subsequent disciplinary report that all purportedly confirm that Romero and Co-Defendant Sedler were the responding officers to the other, close-in-time incident in question. There is no indication in Plaintiffs' brief that this constitutes the whole of Plaintiff's proposed "bad acts" evidence.

The Court generally agrees with Defendants that hypothetical evidence of unrelated "bad acts" could confuse the issues in this case and raise the specter of a trial within a trial. However, the Court also notes that the described evidence relating to the activities of Romero and Sedler shortly after the events in issue, could, at the very least, be admissible for the purpose of impeaching Romero's credibility for truthfulness under Fed. R. Evid. 608(b). In the absence of a full account from Plaintiffs of what constitutes all of the "bad acts" evidence they will attempt to introduce at trial, the Court will reserve ruling on this motion. Thus, the parties must alert the Court prior to introducing any testimonial or extrinsic evidence at trial relating to any alleged "bad acts" committed by any of the Defendant officers, at which time the Court will make a ruling depending on the proffered context. Moreover, the parties are hereby instructed not to mention this evidence during voir dire or opening statements.

**II.   Defendants' Motion in Limine No. 2 to Exclude Any Evidence Pertaining to Police Standard Operating Procedures**

2

Next, Defendants seek to exclude any evidence of the Albuquerque Police Department's (APD's) Standard Operating Procedures ("SOPs"), which, they contend, would be irrelevant to the "objective reasonableness" analysis to be performed by the jury at trial.[1]

Courts of this Circuit have repeatedly excluded evidence regarding law enforcement procedures and regulations as irrelevant in Fourth Amendment cases, on the grounds that a reasonable jury could conclude that an officer who failed to comply with such procedures nonetheless acted reasonably under the pertinent analysis. *See Tanberg v. Sholtis,* 401 F.3d 1151, 1164 ("Although plaintiffs frequently wish to use administrative standards, like the Albuquerque SOPs, to support constitutional damages claims, this could disserve the objective of protecting civil liberties") (APD SOPs were irrelevant to resolution of Fourth Amendment excessive force claim and were not sufficiently probative of state tort claims to be admissible); *see also Marquez v. City of Albuquerque*, 399 F.3d 1216, 1222 (10th Cir. 2005) (expert testimony that officer's use of police dog violated well-established law enforcement standards was properly excluded because establishing such a violation would not have been "*ipso facto* [proof of] a Fourth Amendment violation" for excessive force)**;** *Romero v. Bd. of County Comm'rs,* 60 F.3d 702, 705 (10th Cir. 1995); *Wilson v. Meeks*, 52 F.3d 1547, 1554 (10th Cir. 1995).

Plaintiffs attempt to distinguish their proposed use of the SOPs as admissible for the

---

[1] A "reasonableness" standard governs each of Plaintiffs' Fourth Amendment claims (for excessive force, unreasonable search, and unreasonable seizure). *See, e.g., Graham v. Connor*, 490 U.S. 386, 388 (1989) (excessive force claim assessed under an "objective reasonableness" standard); *Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179, 1188 (10th Cir. 2001) (unreasonable seizure claim involving use of weapons assessed from the perspective of a reasonable officer on the scene); *United States v. Albert*, 579 F.3d 1188, 1193 (unreasonable seizure claim involving use of handcuffs assessed according to "whether the facts available to the officer would warrant a man of reasonable caution in the belief that the action taken was appropriate"); *Armijo v. Peterson*, 601 F.3d 1065, 1070 (10th Cir. 2010) (warrantless search of home proper only where exigencies of the situation make the search objectively reasonable).

limited purpose of impeaching Defendants.  Noting that they "are fully entitled to question any defendant as to their training and experience," Plaintiffs outline a plan "to elicit testimony from the officers regarding their training and experience with SOPs for the purposes of impeachment and likely to refresh [a defendant witness's] recollection with regard to such training."  (Doc. 132 at 2).  The Court fails to see a meaningful distinction between Plaintiffs' proposed method for bringing in the SOPs and simply introducing them as extrinsic evidence.  In either event, introduction of the SOPs has the potential to create jury confusion as to the applicable standards it must consider in determining liability, by tempting it to conclude that a deviation from standard procedure constitutes an *ipso facto* constitutional violation.

### III. Plaintiffs' First Motion in Limine

*Plaintiffs' First Motion in Limine* seeks to exclude any references to two categories of statements made by Lundstrom: 1.) edited and unedited versions of a written statement prepared by Lundstrom on his own initiative after the night of the events in issue, giving his account of the events and describing his anger and frustration with the police,[2] (Doc. 131 Exs. C and D); and 2.) Lundstrom's statements to mental health professionals at an urgent care center three days after the events in issue "that he thought about, desired to run over, kill, or harm police before he sought treatment from the Behavioral Hospital." (Doc. 117 at 1).

Plaintiffs claim that the statements are irrelevant because the pertinent analysis to be employed at trial is whether the officers' actions were objectively reasonable "in light of the

---

[2]Lundstom testified that he prepared these statements with the intent of using them to file a complaint at APD, which he ultimately decided against filing.  (Doc. 131 Ex. A, Lundstom Dep. at 100:5-100:25).  However, he acknowledges providing his original statement to his treating physicians.  *Id.* at 101:1-101:14.  The edited statement refers to these hospital visits. (Doc. 131 Ex. C).

facts and circumstances confronting them*,*" as "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham,* 490 U.S. at 396. According to Plaintiffs, Defendants' attempt to introduce anti-police statements made by Lundstrom *after* the incident constitutes an improper defense "moored in hindsight." (Doc. 121 at 3).

The Court finds that Lundstrom's statements could be admissible for purposes other than determining Defendants' Fourth Amendment liability. For instance, Defendants may seek to admit the statements to rebut Lundstrom's claim for emotional distress damages. *See, e.g., Chamberlin v. City of Albuquerque*, 2005 U.S. Dist. LEXIS 21977, at *4, *9-*12 (July 31, 2005) (mental health records of plaintiff in Fourth Amendment excessive force action admissible as relevant to the issue of plaintiff's damages claim, pursuant to Fed. R. Evid. 405(b)). Thus, the Court will refrain from ruling on this motion until trial, at which time Defendants must alert the Court prior to introducing any testimonial or extrinsic evidence that makes reference to either Lundstrom's written statements describing his anti-law enforcement sentiments or his statements to his treating physicians expressing those same sentiments. The Court will then be in a position to make a ruling depending on the proffered use of the statement. Consequently, the parties are hereby instructed not to mention this evidence during voir dire or opening statements.

### IV.     Plaintiffs' Second Motion in Limine

Finally, Plaintiffs move to exclude portions of the dispatch tapes, CAD tapes, and 911 tapes "that fall outside of what the officers actually heard," along with any testimony or exhibits relating to such evidence, on the argument that such evidence is hearsay and/or irrelevant to the question of whether Defendants' actions toward Plaintiffs were reasonable at the time they undertook to act. (Doc. 171 at 2).

In their untimely response, Defendants express an intent to introduce the transcripts of three sections of two phone calls: 1) the complete 911 call made by Beth Mohr, whose report of possible child abuse taking place at Plaintiffs' home was conveyed to Defendants by officer dispatch; 2) portions of the 911 call made by Lundstrom at the scene, during which he, *inter alia*, questioned whether Romero was impersonating a police officer; and 3) portions of Lundstrom's same call that capture Plaintiff Jane Hibner's separate conversation with the 911 operator, and comments and commands made by Defendant Lorenzo Apodaca at the scene of the incident. With regard to Mohr's 911 call, Defendants argue that complete knowledge of every statement made by Mohr to the 911 operator should be imputed to all Defendants, because the call was summarized to them by dispatch. With regard to Lundstrom's call, Defendants suggest that hearsay exceptions and exclusions apply to the various statements contained therein, without specifying which exceptions or exclusions apply to which statements. Defendants further argue that, because the call was placed by Lundstrom as events unfolded, all information conveyed therein can be deemed to be in the possession of all Defendants. Moreover, Defendants claim that the unedited call is probative evidence of Plaintiffs' escalating the situation by their failure to obey commands, and can also be used to impeach Hibner's claim that the officers "were being mean to her." (Doc. 182 at 6).

The Court concludes that the admissibility, if any, of the 911 calls will depend on the proferred statement contained in the call and the context in which it is offered. Accordingly, the Court will refrain from ruling on this motion until trial. Defendants must alert the Court prior to introducing any testimonial or extrinsic evidence that makes reference to either Mohr's or Lundstrom's 911 call. Further, the parties are instructed not to mention this evidence during voir dire or opening statements.

**CONCLUSION**

**IT IS THEREFORE ORDERED THAT:**

(1)  *Defendants' Motion in Limine No. I to Exclude Any Evidence of Any Allegations of Prior and Subsequent Bad Acts* (Doc. 113) is taken under advisement;

(2)  *Defendants' Motion in Limine No. II to Exclude Any Evidence Pertaining to Police Standard Operation Procedures* (Doc. 115) is **GRANTED;**

(3)  *Plaintiffs' First Motion in Limine* (Doc. 117) is taken under advisement; and

(4)  *Plaintiffs' Second Motion in Limine* (Doc. 170) is taken under advisement.

_____
UNITED STATES DISTRICT JUDGE