## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**JOSEPH LUNDSTROM and**
**JANE HIBNER,**

          **Plaintiffs,**

**vs.**                                      **CIV No. 07-759 JCH/WDS**

**ALBUQUERQUE POLICE OFFICERS**
**DEBRA ROMERO, ANTHONY SEDLER,**
**LORENZO APODACA, EDOUARD TAYLOR,**
**and ZAZZA GREEN, in their individual**
**capacities and as employees of the**
**City of Albuquerque,**

          **Defendants.**

### MEMORANDUM OPINION AND ORDER

      This matter is before the Court on Plaintiff Joseph Lundstrom's and Plaintiff Jane Hibner's *Motion for Attorneys' Fees and Expenses and Memorandum Brief in Support* (Doc. 227). This case was tried before the undersigned U.S. District Judge from April 16, 2012 - April 20, 2012, at the conclusion of which the jury returned a verdict in favor of Plaintiffs on eight of the thirteen claims in issue.[1] The jury further awarded Plaintiff Lundstrom $100,000 and Plaintiff Hibner $75,000 in compensatory damages. Now, Plaintiffs' counsel seek to recover a total sum of $574,774.85 in attorneys' fees and gross receipts tax for their efforts on behalf of Lundstrom and Hibner. *See* Doc. 238 at 18-19 (revising fee request set forth in Plaintiffs'

---

[1] Defendants do not argue that the fee award should be reduced because the five claims on which Plaintiffs failed to prevail are wholly distinct from the eight claims on which they succeeded. *See Hensley v. Eckerhart*, 461 U.S. 424, 440 (1983) (noting that "[w]here a plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee").

opening brief).  After reviewing the evidence and arguments of the parties and their counsel, the Court concludes that the motion for attorneys' fees should be granted, although the amount of fees awarded to Plaintiffs is $457,175.85, including gross receipts tax.


**DISCUSSION**

While the general rule in our legal system is that each party must pay its own attorney's fees and expenses, *see Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983), Congress enacted 42 U.S.C. § 1988 in order to ensure that federal rights are adequately enforced.  The purpose of an award of attorney's fees under § 1988 is to ensure "effective access of the judicial process" for persons with civil rights grievances.  *Id.*; *see also Gudenkauf v. Stauffer Communications, Inc.*, 158 F.3d 1074, 1081 (10th Cir. 1998).  Section 1988 provides that a prevailing party in certain civil rights actions may recover "a reasonable attorney's fee as part of the costs."  Thus, the award of fees is a two-step process.  *Hensley*, 461 U.S. at 429-430; *Jane L. v. Bangerter*, 61 F.3d 1505, 1509 (10th Cir. 1995). First, the court must determine whether an applicant is a prevailing party. *Id*. Second, the court must determine what is a reasonable fee. *Id.*  In order to arrive at a reasonable fee, courts generally use the "lodestar," which is the "product of the number of attorney hours 'reasonably expended' and a 'reasonable hourly rate.'"  *Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir. 1998) (citing *Hensley*, 461 U.S. at 433).


**I.  Prevailing Party**

The Supreme Court has held that "a prevailing plaintiff should ordinarily recover an

attorney's fee unless special circumstances would render such an award unjust." *Hensley*, 461 U.S. at 429, 103 S.Ct. 1933. "[P]laintiffs may be considered prevailing parties for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley*, 461 U.S. at 433, 103 S.Ct. 1933 (quoting *Nadeau v. Helgemoe*, 581 F.2d 275, 278–79 (1st Cir. 1978), *overruled on other grounds by Richardson v. Miller*, 279 F.3d 1, 4 (1st Cir. 2002)) (internal quotation marks omitted).  Put another way, a plaintiff is a prevailing party when the "actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying defendant's behavior." *Farrar v. Hobby*, 506 U.S. 103, 111–12 (1992); *see also Sole v. Wyner*, 551 U.S. 74, 127 S.Ct. 2188, 2194 (2007) ("The touchstone of the prevailing party inquiry . . . is the material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute.") (quoting *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792-93 (1989)). In *Farrar*, the Court explicitly held that an award for nominal damages serves to alter the legal relationship between the parties such that the plaintiff must be considered a prevailing party. 506 U.S. at 112, 113 S.Ct. 566 ("We therefore hold that a plaintiff who wins nominal damages is a prevailing party under § 1988.").  *See also Barber v. T.D. Williamson, Inc.*, 254 F.3d 1223, 1229 (10th Cir.2001) ("'[N]ominal relief does not necessarily a nominal victory make.' ") (quoting *Farrar*, 506 U.S. at 121 (O'Connor, J., concurring)).

Defendants do not dispute that Plaintiffs were the prevailing partes at trial.  *See* Doc. 235 at 2.  Indeed, there can be no doubt that the jury's verdict finding liability and imposing damages altered the legal relationship between Plaintiffs and Defendants.  Thus, the foregoing authorities demonstrate that Plaintiffs have prevailed for the purposes of analyzing her application for

attorneys' fees.

## II. Lodestar Calculation of Reasonable Attorneys' Fees

The parties agree that the proper method for determining the fee award in this case is the "lodestar" – for each attorney, the product of her "reasonable hourly rate" and the number of hours she 'reasonably expended' on the case.  *Robinson,*160 F.3d at 1281.

### A.  Reasonable Hourly Rates

The Court next turns to the determination of a reasonable hourly rate for each member of Plaintiffs' counsel team: lead attorney Frances Carpenter, attorney Rachel Higgins, attorney Jennifer Wernersbach, fee expert/fee counsel Phil Davis, and three members of Plaintiffs' legal support staff.

<u>**Attorney Frances Carpenter**</u>

Plaintiffs request compensation at the rate of $275 per hour for attorney Frances Carpenter.  In support of the suggested rate,  Plaintiffs proffer testimonial evidence that an hourly rate of $225-$275 is typical for attorneys of comparable experience in Albuquerque, New Mexico. (Doc. 227 Ex. 4 Davis Aff. ¶ 15; Ex. 7 Shannon Kennedy Aff. ¶ 21).  Defendants respond that an appropriate hourly rate for Carpenter, who graduated from law school in 2004, "would be between $175 and $185 per hour" because she "had only been licensed to practice for three years" when she filed the instant suit and "had not been admitted to practice before the Tenth Circuit until she filed the Notice of Appeal" in 2008.  (Doc. 235 Ex. 7 Walz Aff. ¶ 26). Defendants further note that Carpenter has only tried two cases before a jury in federal court, including this one, and committed a number of errors over the course of the litigation.

4

The Court finds that an appropriate hourly rate for Carpenter – based on her leading role in litigating the instant case to a successful result  and eight years' litigation experience at the time the instant motion was filed – is $245 per hour.  *See Valdez v. Herrera,* Civ. No. 09-668 JCH/DJS (Order Granting Attorneys' Fees, 3/21/11) (Doc. 149) (awarding fees of $225 per hour for associates who graduated from law school between 2001 and 2006); *Avila v. Ratchner,* Civ. No. 01-349 JC/LAM ((Memorandum Opinion and Order, 9/27/10) (Doc. 214) (awarding fees of $200 per hour to associates on comparatively large trial team who, unlike Carpenter, were not lead counsel on case).

### **Attorney Rachel Higgins**

Plaintiffs request compensation at the rate of $295 per hour for attorney Rachel Higgins, which they seek to support by the affidavits of Higgins and her colleagues.  *See* Doc. 227 Ex. 3 Higgins Aff. ¶¶ 4-5 (noting that Higgins has "practiced law continuously in New Mexico since 1999," opened a solo practice in 2003, and has tried twelve civil jury cases); *id.* Ex. 4 Davis Aff. ¶ 15 (opining that the market rate for one of Higgins' experience is $250-$300 per hour); *id*. Ex. 7 Shannon Kennedy Aff. ¶ 21 (same).  Defendants respond, in a general fashion, that Higgins should be compensated at the rate of $200 per hour, because, "[a]lthough Ms. Higgins is a very competent attorney," she is seeking a fee award comparable to the $300 per hour awarded to Mary Han in *Avila,*" though "Han had far more trial experience."  (Doc. 235 at 12).

The Court finds that an appropriate hourly rate for Higgins – based on her experience and the results obtained for her clients in the instant case – is the requested $295 per hour.  *See Valdez,* Civ. No. 09-668 JCH/DJS (Doc. 149) (awarding fees of $300 per hour for attorneys who graduated from law school between 1996 and 2000)**.**

**Attorney Jennifer Wernersbach**

Plaintiffs propose that attorney Jennifer Wernersbach receive compensation at an hourly rate of $225. Like Carpenter, Wernersbach graduated from law school in 2004, and works primarily in the area of criminal defense. Plaintiffs appear to have adjusted their proposed rate for Wernersbach in light of the fact that she withdrew as counsel in August 2008, shortly before Plaintiffs' successful appeal to the Tenth Circuit and almost four years before this case ultimately proceeded to trial. *See* Doc. 227 Ex. 4 Davis Aff. ¶ 15 (contending that hourly rate of $225-$275 is reasonable for attorneys of comparable litigation experience in Albuquerque). Plaintiffs further contend that Wernersbach's requested rate is in line with the $175 hourly rate she was apparently awarded in a civil rights case seven years ago.[2] Defendants respond that Wernersbach should be compensated at an hourly rate of just $125, because she has served as counsel of record in only two cases in federal court and has comparatively little experience in the area of civil rights litigation.

The Court finds, using its fee analysis in *Valdez* as a guide, that an appropriate hourly rate for Wernersbach is $225. *See supra* at 4.

**Attorney Philip B. Davis**

Plaintiffs request compensation at the rate of $350 per hour for attorney Philip Davis, who has filed an affidavit with the Court outlining his education, experience, professional recognition, and approved hourly rate in other cases. Defendants do not challenge the reasonableness of Davis' proposed hourly rate. The Court concludes that the rate of $350 an hour for Davis' services is reasonable. *See Trustees of the Southwest Multi-Craft Health &*

---

[2]Plaintiffs do not identify the case for which Wernersbach was compensated at an hourly rate of $175, nor proffer the court order that established her fee.

*Welfare Trust Fund v. J.T. Thorpe & Son, Inc.,* Civ. No. 10-613 WJ/KBM (Amended Default

Judgment, 10/18/10) (Doc. 15) (finding hourly rate of $350 for Davis to be fair and appropriate)**.**

### Support Staff

Plaintiffs seek compensation for Neal Bell, a law student intern to Carpenter, at the

hourly rate of $100; Sandra Ownby, Carpenter's paralegal, at the hourly rate of $75; and Judy

Seigel, a litigation assistant to Higgins, at the hourly rate of $150.  Plaintiffs offer no evidence in

support of the reasonableness of Bell's proposed rate, and the Court finds that a more

appropriate rate for a third-year law student would be $55 per hour.  *See Johnson v. Baxter*

*Healthcare, et al.*, Civ. No. 05-00357 JH/RLP (3/13/09 Memorandum Opinion and Order) (Doc.

127 at 4) ("In the Court's view, a reasonable rate for law students with some legal training but

virtually no legal experience is $50 dollars per hour").

The Court finds Ownsby's proposed rate to be reasonable for the Albuquerque market

and her level of experience.  *See* Doc. 227 Ex.1 Carpenter Aff. ¶ 22 (noting that Ownby "is a

graduate of an ABA[-]approved paralegal program who has been working in the legal field since

her graduation in April 2011"); *see also Copar Pumice Co., Inc. v. Allan Morris, et al.*, Civ. No.

07-00079 JB/ACT (6/13/12 Memorandum Opinion and Order) (Doc. 211 at 36) (approving $75

hourly rate for paralegals in local market); *Pena v. Belen Consolidated, et al.*, Civ. No. 04-01352

LFG/RLP (4/3/06 Memorandum Opinion and Order) (Doc. 56 at 16) (same).

Finally, Plaintiffs contend that Seigel's proposed rate is "to be applauded as a noteworthy

exercise of billing judgment," (Doc. 227 at 12 n.7), in light of her considerable experience as a

litigator in another district  *See id.,* Ex. 2 Higgins Aff. ¶ 11 (describing how Seigel graduated

from Georgetown University Law Center in 1978, received an L.L.M. from NYU in 1986, and

practiced in New York as a litigation associate and partner for approximately twenty years); Ex. 4 Davis Aff. ¶ 19 (opining that Seigel's requested rate is "well below the market rate of a lawyer of her years' experience, who would command an hourly rate far in excess of $150 per hour"). However, the fact remains that Seigel did not serve as counsel of record in this case.  See also id. Ex. 2-2 (billing invoices showing that Seigel performed tasks including performing legal research and drafting memos).  Accordingly, taking into consideration Seigel's education and experience, the Court finds that an appropriate hourly rate for Seigel is $105 – at the high end of the hourly rate for a paralegal in the Albuquerque market.  *See Johnson v. Life Insurance Co. of North America*, Civ. No. 05-00357 JCH/RLP (3/13/09 Memorandum Opinion and Order) (Doc. 127 at 4) (approving $105 hourly rate for Modrall Sperling paralegal with nine years' relevant experience).

## B.  Hours Reasonably Expended by Carpenter

Defendants attack the hours for which Carpenter requests compensation on a number of fronts, and request that the Court reduce her hours from its lodestar calculation of her fee award accordingly. While mindful of the fact that a "request for attorney's fees should not result in a second major litigation," *Hensley,* 461 U.S. at 437, the Court addresses each of Defendants' arguments in turn.

### *Billing entries challenged as vague*

First, Defendants contend that 46.6 hours should be deducted from Carpenter's time because of billing entries that are too vague for the Court to properly evaluate for their reasonableness.  In Plaintiffs' reply and her supplemental affidavit, Carpenter attempts to explain the contents of some of these billing entries, albeit in a general fashion.  *See* Doc. 238 Ex. 3

Carpenter Supp. Aff. ¶¶ 17 (giving "examples" of entries disputed as vague for which Defendants could have arrived at a better understanding, "with little effort").  Rather, as an alternative to "this Court having to spend its precious judicial resources parsing the numerous time entries attacked by the Defendants," Plaintiffs suggest the Court deduct a flat number of hours from Carpenters' time, and not attempt to arrive at a precise calculation of the hours Carpenter reasonably expended over the course of this five-year litigation.  (Doc. 238 at 9).  Plaintiffs do not propose a specific reduction of hours for the entries challenged as vague.

### *Billing entries challenged as spent on clerical work*

Second, Defendants contend that 67.6 hours Carpenter spent on clerical work – including filing, mailing, calendaring, and serving subpoenas –  should be deducted from her fee calculation.  Plaintiffs respond that many of the entries cited as totally clerical in nature "unambiguously involve[d] lawyer work" as well.  *Id.*  Further, Plaintiffs argue that deducting time spent on clerical tasks would be unfair, as "a solo practice lawyer is obligated 'to do it all' and because she must, is entitled to be compensated for her time accordingly."  *Id*. at 10.  (Plaintiffs do not attempt to explain why the disputed tasks were not delegable to Carpenter's support staff, including a paralegal and intern.).  However, rather than defend each of the entries challenged as "clerical" by Defendants, Plaintiffs propose reducing this portion of Carpenter's time by 15 hours as a compromise measure.

### *Billing entries challenged as excessive*

Third, Defendants propose that the Court deduct an additional 60 hours from Carpenter's time for excessive billing.  Specifically, Defendants identify 62 separate billing entries which, they claim, reveal that Carpenter devoted more time than needed to the described activity.  *See,*

*e.g.,* Doc. 235 at 20 (challenging entry of 12 hours for "deposition and prep time for Joe Lundstrom," on the basis that the deposition itself lasted two hours and forty-seven minutes, so Carpenter's twelve-hour billing entry is "excessive on its face unless Plaintiff's counsel can establish that she prepared for the deposition from 1:00 a.m. until 9:00 a.m".).  In their reply, Plaintiffs decline to address any of the allegedly excessive entries individually, but state that Carpenter agrees to reduce 31 hours from this category of time.

### Billing entries challenged as inaccurate

Fourth, Defendants contend that 35.35  hours should be deducted from Carpenter's time because of billing entries which are inaccurate.  *See, e.g.,* Doc. 235 at 23 (noting how Carpenter billed three (3) hours' time for reviewing Defendants' answers to Plaintiffs' second sets of document production requests and interrogatories in October 2007, though Plaintiffs had not yet even served a first set of either by the date in issue); *id.* at 24 (Carpenter billing 3.5 hours for reviewing material that had not been disclosed until after entry of protective order one month later).  Plaintiffs do not attempt to dispute any of the challenged entries, and respond only that Carpenter "agrees to a reduction of 15.0 hours, as opposed to all of the 35.35 hours which the Defendants seek to reduce from this category of time."  (Doc. 238 at 10).

### Billing entries challenged as duplicative

Fifth, Defendants contend that a total of nine (9) hours billed by Carpenter consists of duplicate billing entries, such as two 30-minute entries for reviewing the same Answer. Plaintiffs respond only that a reduction of 4.5 hours would be an appropriate compromise.

### Billing entries challenged for "block billing"

Sixth, Defendants contend that the Court should deduct 180 of the 377.5 hours for which

Carpenter engaged in "block billing" – i.e., grouped several tasks together in one time entry, thereby making it difficult for the Court to determine the reasonableness of the time she expended on each specific task.  Plaintiffs respond that Carpenter's alleged block billing can be grouped into three categories: (1) time spent preparing for the first (vacated) trial in Summer 2008; (2) time spent in transit and in Denver, CO,  for oral argument on Plaintiffs' appeal of the Court's entry of summary judgment before the Tenth Circuit; and (3) time spent preparing for the trial that occurred in April 2012.  Plaintiffs do not attempt to justify the purported block entries for work performed before the two trial dates in this case, instead urging the Court to "look at Carpenter's time records, understand from them the tasks that she performed[,] and determine that the time spent on them was reasonable."  (Doc. 238 at 11-12).

As for the time her billing entries state she spent in Colorado for oral argument, Carpenter concedes that she cannot account for 16 hours of it.  *See* Doc. 238 Ex. 3 Carpenter Supp. Aff. ¶ 24) (Carpenter acknowledging that, rather than the 36 total hours that her billing invoice recites she spent in transit and in Denver, her time "breaks down as 7 hours travel, 12 hours preparing for oral argument, 1 hours attending oral argument," which totals 20 hours).  Moreover, Carpenter agrees that, of this time, the seven hours she spent traveling to and from Denver should be compensated at 50% of her hourly rate.  *See* Doc. 238 at 12 (citing *Kee v. Smith*, Civ. No. 02-1243 JCH/RHS (10/31/06 Memorandum Opinion and Order) (Doc. 139 at 6-7) (applying a 50% reduction for attorney time spent in transit)).

### *Billing entries challenged for insufficiently-detailed legal research*

Defendants challenge 61 hours spent by Carpenter on legal research, on the ground that the research is insufficiently detailed in her invoice. Once again, Plaintiffs do not attempt to

11

specifically explain each of the challenged entries.  *See* Doc. 238 Ex. 3 Carpenter Supp. Aff. ¶ 25

(stating only that "[i]n regards to the legal research on March 26-28, 2012 . . . I went to the law

library and checked out several books regarding the history and scope of the 4th Amendment to

aid me in my opening and closing arguments").  Plaintiffs do not concede that any of the

challenged entries should be deducted from Carpenter's fee.

### Court's Determination of Carpenter's Reasonably-Expended Hours

As reflected in, *inter alia,* the various concessions described above, Plaintiffs concede

that the Court should deduct a total of 90.5 hours from Carpenter's billing invoices, which would

leave her with 1625.35 compensable hours.[3]  Considering Plaintiffs' failure to account in a

satisfactory manner for many – indeed, most – of the deficiencies identified by Defendants in

Carpenter's billing, the Court finds that Carpenter's time should be reduced further.  Plaintiffs'

proposed compromise figure does not include reductions for Carpenter's vague time entries or

block billing.  Further, and more troubling, Plaintiffs fail to provide any explanation for the

35.35 hours' worth of billing entries challenged by Defendants as inaccurate – i.e., describing

tasks that simply could not have been performed on the dates in question.  Accordingly, the

Court will (1) deduct 20.35 inaccurately-billed hours[4] from Carpenter's 1625.35 total proposed

---

[3]It is unclear how Plaintiffs arrive at a total proposed reduction of 90.5 hours, as
Plaintiffs specifically suggest deducting five (5) hours for Carpenter's work on a motion to
compel, 15 hours for clerical tasks, 31 hours for excessive time, 15 hours for inaccurate billing
entries, 4.5 hours for duplicate entries, and 16 hours for the unaccounted-for time billed during
Carpenter's Denver trip, which adds up to 86.5 hours.  Plaintiffs' proposed reduction does not
include Carpenter's seven (7) hours total travel time, which, the Court agrees, should be
calculated at 50% of her approved hourly rate.

[4]As noted *supra*, at 10, Plaintiffs previously agreed to cut 15 hours from the 35.35 hours
Carpenter inaccurately billed.  Thus, a deduction of 15 hours is already reflected in Carpenter's
revised fee request.

hours, and (2) take the resulting figure, 1605.0 hours, and reduce it by an additional 15%, or 240.75 hours. The Court is mindful of the fact that Carpenter devoted considerable time and energy to this case for over five years, without any certainty that her clients would prevail and that she would be compensated for her efforts. Nevertheless, the Court will not require Defendants to compensate Carpenter for hours that were inadequately documented and insufficiently explained in the briefing. Weighing these two considerations, as it must, the Court concludes that a 15% reduction in Carpenter's time is reasonable.

Therefore, the Court finds that Carpenter reasonably expended 1364.25 hours on the instant action.

### C. Hours Expended by Higgins

Defendants complain of (1) vague time entries by Higgins, and further contend that Higgins spent excessive time on (2) preparing witnesses for trial, which Defendants deem duplicative of Carpenter's hours spent on the same task; (3) the final day of trial, for which she seeks 10 hours of compensation; and (4) preparing her fee affidavit, which Defendants contend is a "boilerplate" document. The Court disagrees with Defendants' contentions. While Higgins' billing for "case research" on two separate occasions is indeed not particularly detailed, the Court accepts the fuller explanation of her activities provided in her supplemental affidavit. (Doc. 238 Ex.4 Higgins Supp. Aff. ¶ 3). Further, the Court sees nothing unreasonable in two litigators – both of whom examined and cross-examined witnesses at trial – both devoting considerable time to witness preparation. Nor is the Court inclined to question Higgins' assertions that on the final day of trial "[m]y work day that day . . . began at 6:45 a.m," or that

her fee affidavit was "not boilerplate" because she has never had cause to prepare one before.[5]

*Id.* ¶¶ 5-6.  Accordingly, the Court will not deduct any of the hours for which Higgins seeks compensation.

Therefore, the Court finds that Higgins reasonably expended 185.27 hours on the instant action.

### D.  Hours Expended by Wernersbach

Defendants attack a number of billing entries submitted by Wernersbach.  First, they contend that they should not be required to compensate Plaintiffs for Wernersbach's presence at hearings and depositions also attended by Carpenter, noting that, unlike Carpenter, Wernersbach "did not ask any questions of the officers during depositions and . . . did not argue during the two hearings that she attended."  (Doc. 235 at 31).  Plaintiffs respond, *inter alia,* that Wernersbach and Carpenter "were both entitled to be present at the depositions . . . and to work together preparing [for] them," and that, having worked on Plaintiffs' summary judgment response brief, Wernersbach's "presence at the hearing in order to provide assistance to Ms. Carpenter was sound practice."  (Doc. 238 at 15).

While no one questions whether Wernersbach had the right to be present for depositions she did not take or hearings at which she did not argue, the Court finds that Plaintiffs are not entitled to compensation for her presence there.  In the Tenth Circuit, one "factor the court should examine in determining the reasonableness of hours expended is the potential duplication

---

[5]Defendants further point to an entry for $4662.50 in expenses on Higgins' invoice, which appears without description or explanation.  (Doc. 227 Ex. 2-1).  Higgins concedes the error and notes that the correct figure appears in the body of Plaintiffs' motion.

of services. 'For example, [if] three attorneys are present at a hearing when one would suffice, compensation should be denied for the excess time.'" *Ramos v. Lamm,* 713 F.2d 546, 554 (quoting *Copeland v. Marshall*, 641 F.2d at 891); *see also id.* ("if the same task is performed by more than one lawyer, multiple compensation should be denied. The court should assess the possibility that reported hours include duplication by reviewing with particular care the number of lawyers present at hearings, depositions, and other discovery proceedings"). Accordingly, the Court finds that the following billing entries for Wernersbach, which are duplicative of Carpenter's work, should be deducted from Plaintiffs' fee award: 10/24/07 ("prepared officer deposition notices", .75 hours), 11/19/07 ("meeting with client re depo prep, 2 hours), 11/20/07 ("Joseph Lundstrom deposition," 2 hours), 12/12/07 ("prep for officer depos with FC," 1 hour). 12/14/07 ("Jane Hibner deposition," 1.75 hours), 12/19/07 ("Edouard Taylor deposition," .6 hours), 12/19/07 ("Anthony Sedler deposition," .6 hours), 1/10/08 ("telephonic hearing re scheduling," .3 hours), 1/10/08 ("follow-up with FC re telephonic hearing," .75 hours), 2/20/08 ("prep for Debra Romero depo," 1.5 hours), 2/21/08 ("Debra Romero deposition," 1.75 hours), 2/27/08 ("Zazza Green deposition," .60 hours), 5/13/08 ("hearing re motions to exclude experts, motion for sanctions/spoilation, motion to extend time," 1.5 hours), 5/13/08 ("follow-up meeting with FC re hearing," 1.5 hours).[6]

Further, Defendants contend that they should not be required to compensate Plaintiffs for

---

[6]Defendants also request that the Court deduct Wernersbach's time billed for drafting the Complaint, drafting Plaintiffs' responses to Defendants' summary judgment motions, and preparing the exhibits to these motions, on the ground that Carpenter also participated in drafting or preparing some of these documents. However, Defendants do not attempt to demonstrate that Wernersbach's and Carpenter's work was duplicative on these projects, nor argue that the hours spent on them were excessive. Accordingly, the Court will not deny compensation for Wernersbach's efforts on them.

2.5 hours Wernersbach spent conducting informal interviews with law enforcement officers Norma Endres, Zak Cottrell, Conrad Griego, Ivan Varela, and Mel Acata.[7]  Defendants note that they represented to Plaintiffs at the time they agreed to make the officers available for interviews that none of them had any discoverable information related to the instant case, which in fact turned out to be the case.  Plaintiffs respond, in conclusory fashion, that the 2.5 hours Wernersbach spent on interviews not leading to relevant evidence should not be deducted from their fee award, in the larger scope of the "excellent results" Plaintiffs obtained at trial.  (Doc. 238 at 15).  Because Plaintiffs do not even attempt to persuade the Court that the officers in question had any connection to the instant case, the Court will deduct the 2.5  hours Wernersbach spent on these informal interviews from her portion of the lodestar.

Finally, Defendants argue that 30 minutes Wernersbach spent requesting medical records, 45 minutes spent drafting deposition notices, and 30 minutes spent drafting letters on two separate occasions "are excessive and are also clerical function [sic]."  *Id.* at 32.  The Court rejects Defendants' characterization, and will not deduct this time from the lodestar.

Therefore, after deducting the 16.6 total hours spent by Wernersbach on duplicative tasks and 2.5 hours spent on unnecessary interviews (for a total deduction of 19.1 hours), the Court finds that Wernersbach reasonably expended 62.45 hours on the instant action.

### E.  Hours Expended by Davis

In support of their position that the hours billed by Davis, Plaintiffs' fee counsel/expert, are excessive, Defendants contend that Davis "did not have to conduct extensive research or

---

[7]While Defendants state that Wernersbach billed **3.5** hours for these interviews, her billing invoice clearly shows that she devoted **2.5** hours to them.  (Doc. 227 Ex.3)

spend an excessive amount of time drafting the attorney fee motion," given that a cornerstone of his practice is preparing similar motions for other plaintiff's attorneys. (Doc. 235 at 32). Defendants specifically challenge several of Davis' billing entries, including five time entries totaling 1.4 hours for drafting and reviewing Plaintiffs' unopposed motion for extension of time for filing the instant motion.  As a remedy for Davis' allegedly excessive billing, Defendants propose deducting 15 hours from the 27.7 hours for which he claims compensation, up through the filing of the instant motion.  (Davis also requests compensation for an additional 31 hours spent on Plaintiffs' reply brief and its attachments.  Defendants have not challenged the additional hours via surreply brief).

The Court agrees that a number of the 58.7 total hours expended by Davis on the instant briefing were unnecessary.  First, the Court notes that Plaintiffs seek compensation for Davis' preparation of his affidavit and supplemental affidavit, notwithstanding the fact that Plaintiffs' other expert witnesses, Brad Hall, Joseph Kennedy, and Shannon Kennedy, do not seek compensation for providing their testimony.  Indeed, even if Plaintiffs had not singled out Davis for fee-expert compensation, Plaintiffs do not point to any feature of the instant case so unique that Davis was required to invest considerable time in revising and updating his standard affidavit, in light of the frequency with which he submits affidavits in similar cases.[8]  *See Murtagh, et al. v. Landers, et al.*, Civ. No. 00-1679 BB/LFG (Memorandum Opinion and Order, 7/12/02) (Doc. 129 at 17) (noting that "this case did not present novel or complex legal or factual issues" and did not "generate[] substantial discovery and cutting edge legal issues," in reducing

---

[8]Defendants do not object to Davis serving as both Plaintiffs' expert witness (attesting to the reasonableness of Plaintiffs' counsel's proposed hourly rates) *and* fee counsel (who seeks compensation for drafting their briefing in support of the instant motion and reviewing Plaintiffs' counsel's affidavits, and the affidavits of his fellow expert witnesses).

Davis' fee award).

Similarly, the Court is inclined to find excessive the amount of time for which Davis seeks compensation time for "working on" and revising Plaintiffs' counsel's affidavits – and in Carpenter's case, her supplemental affidavit – particularly in light of the fact that Carpenter and Higgins also request compensation for their work on the same affidavits.   Finally, the Court finds that Davis' invoices contain a number of submissions – in addition to the 1.6 hours spent on drafting a boilerplate, unopposed motion for a time extension – that appear to have taken more time than necessary. *See, e.g.*, Doc. 227 Ex. 4-1 (billing 3 hours to "[b]egin pulling case cites and excerpts for use in reply brief") Doc. 238 Ex. I-1 (billing 1.6 hours on 9/20/12 for reviewing Defendants' response brief; billing .9 hours on 10/8/12 to "edit, spell check, cite check portion of fee reply drafted to date").   Thus, in order to establish a reasonable fee award for Davis, the Court finds that an appropriate solution is to reduce the 58.7 hours he expended by a factor of 35% (for a total deduction of 20.55 hours).

Therefore, the Court finds that Davis reasonably expended 38.15 hours on the instant action, which places his fee in line with his award for his services as fee counsel in similar cases. *See Kee v. Smith,* Civ. No. 02-1243 (Plaintiffs' Reply to Defendants' Response to Motion for Attorneys' Fees, 4/19/05) (Doc. 139 Ex. 2 Davis Aff.at 5) (Davis seeking compensation for 34.9 hours expended as fee counsel); *Murtagh,* Civ. No. 00-1679 at 19 (Davis seeking compensation for 31.8 hours expended as fee counsel; hours reduced for other reasons)


**F.  Hours Expended by Support Staff**

Finally, the Court rejects Defendants' argument that the nine (9) hours spent by law

student Neal Bell should be reduced, and the 91.1 hours spent by paralegal Sandra Ownby should be deducted altogether, because the work was, according to Defendants, clerical in nature.  A review of Plaintiffs' invoices shows that Ownby's time was spent on tasks like preparing trial exhibits and notebooks, while Bell performed legal research and helped format Plaintiffs' appellate brief and appendix.  The Court finds these expenses not only reasonable, but typical, and will not deduct any of the hours claimed by Bell, Ownby, or Higgins' litigation assistant, Judy Seigel, which Defendants do not challenge.

Therefore, the Court finds that Bell reasonably expended nine (9) hours, Ownby reasonably expended 91.1 hours, and Seigel reasonably expended 26.5 hours on the instant action.

## CONCLUSION

In light of the foregoing, the Court awards Plaintiffs Joseph Lundstrom and Jane Hibner attorneys' fees as follows:

(1) for Frances Carpenter, 1364.25 hours at $245 per hour, for a total of $334,241.25;

(2) for Carpenter's travel, 7.0 hours at $122.50 per hour, for a total of $857.50;

(3) for Rachel Higgins, 185.27 hours at $295 per hour, for a total of $54,654.65;

(4) for Jennifer Wernersbach, 62.45 hours at $225 per hour, for a total of $14,051.25;

(5) for Phillip Davis, 38.15 hours at $350 per hour, for a total of $13,352.50;

(6) for Neal Bell, 9 hours at $55 per hour, for a total of $495.00;

(7) for Sandra Ownby, 91.1. hours at $75 per hour, for a total of $6,832.50;

(8) for Judy Seigel, 26.5 hours at $105 per hour, for a total of $2,782.50;

(9) 7% New Mexico gross receipts tax on the foregoing for a total tax of $29,908.70.

**IT IS THEREFORE ORDERED** that Plaintiffs' *Motion for Attorneys' Fees and Expenses and Memorandum Brief in Support* (Doc. 227) is **GRANTED** as explained above, and the Court awards them a total of $457,175.85 in attorneys' fees and taxes.

_____
**UNITED STATES DISTRICT COURT JUDGE**

20